The Republic of Tajikistan. Mr. Kryan for the Affiliate, Mr. Silliman for the Affiliate. Good morning, Council. You may proceed. Good morning, Your Honors. It's an honor and a pleasure to be here in person with at least two of the judges, and good morning, Judge Rogers, and with Council. The District Court's piecemeal analysis of the circumstances of control and domination of Tajik Air by Tajikistan transformed the presumption of separateness into a conclusive presumption. The District Court's own language reveals the piecemeal approach taken by the District Court, which conflicts directly with this circuit's rule and requires reversal. The error here is the District Court made it an irrebuttable presumption on a motion to dismiss. In fairness, Council, I understand that the District Court opinion doesn't ever say that and looking at everything together, but he does go through each of the arguments and he does more than make a conclusory statement. He explains why he isn't persuaded by your argument, so where's the error? Your Honor, I understand your point. The language of the District Court that I'm pointing to is scattered throughout the opinion, and I'll show it to your Honor specifically. For example, on the issue of- Tell me where it is in the JA and I'll bring it up. Your Honor, we're starting with page A452. Right. On the issue of high-ranking government officials occupying all seats on the board, the District Court stated, quote, the presumption cannot be overcome simply because high-ranking officials sit on the board. On that same page, the District Court stated that this fact, quote, by itself, close quote, was insufficient to overcome the presumption. So that's the point of what I- my question. He went through each of your objections and found them unpersuasive and said why. He never said, and looking at them all together, I conclude that you have not met your burden. Is that the error? You are right, Your Honor. The District Court did not follow circuit precedent set in 2020 in the TIG versus Argentina case in which this court stated, quote, we joined several other circuits in holding that District Courts should look to the totality of circumstances to make this determination. Another example on page 448 of the JA. Regarding the facts of 100% ownership and the government's authority to appoint and fire the Director General, the District Judge stated that these two facts, quote, do not by themselves establish the required control, end quote. Your Honors, we never argued that those two facts by themselves establish the required control, but this language from the opinions shows that the District Court conducted the wrong analysis. It's like pieces of a puzzle. The District Court picked up each piece and discarded it without putting them together and seeing the full picture. It never got the view. So where did you bring this to the District Court's attention? Your Honor, we stated throughout all of our briefs and in the hearing that it's the totality of the facts, not any one fact that is determinative here. And that's why this decision must be vacated and remanded. You cannot have an opinion out there that goes fact by fact, discards each one, but never gives the petitioner the ability to present the total facts and circumstances. For example, on the fact that they were represented by a civil servant, non-lawyer, head of the Transportation Department, the District Court stated at 457 that that fact, quote, cannot bear the burden of overcoming the presumption of separateness, close quote. Mr. Pride, I mean, in making a fact by fact determination, I mean, to take all of the facts in the totality, you still have to consider each fact along the way. And at the end of its discussion of this, I mean, the District Court talks about the fact that taking everything together, this is closer to the spectrum of cases in which there was separateness. Yes, Your Honor. But the language that I pointed to throughout the opinion shows that the District Court did not follow the analysis that this court set down, which is to examine the totality of the circumstances. But why isn't what Judge Rao just pointed to where the judge did that? Your Honor, the judge absolutely did not do that. And the reason I say that is based on the text of the ruling, the language that I just quoted to Your Honor, wherein the judge did not conduct the totality of the circumstances analysis, quite the opposite. No, I don't understand your point. The judge said, look, you raised 10 points. I don't find each alone enough. And then at the end, the point that Judge Rao makes says, why isn't the judge saying and looking at everything together? Yes, Your Honor. And Judge Rao is absolutely correct. The district judge does intone that at the very end of the opinion. But the whole opinion leading up to that refutes that that was the analysis conducted. Your Honor. I don't understand. When the judge was considering Allegation 1, was he supposed to say, I don't find this persuasive? And in the totality, I don't find it persuasive? As distinct from saying, none of these facts that you allege is persuasive, and looking at all of them together. Why isn't that sufficient? I don't see our cases as limiting the judge or the district court the way you suggest so long as the judge does at some point address totality. Totality and I'm not even sure. I know one of my colleagues and I've had this discussion in another context, but I don't even know that it's necessary to do other than as the judge did here. That's what I'm trying to understand. What is, as it were, the prejudice to your client by the judge saying, this alone doesn't do it, that alone doesn't do it, that alone, and taking all these things together, not enough. That's what I don't understand about this argument. Your Honor, it is because this is a motion to dismiss. There's never been an evidentiary hearing held in this case. With facts such as 100% ownership, control of the board of directors, but also the government controlled each and every decision, large and small, it inserted their version of the FAA, the Civil Aviation Agency, into that airline and that agency made every day-to-day business decision. That's not correct. It's contradictory. Your Honor, that was never contradicted. In fact, there's no declaration that even mentions the CAA and Tajik Air's brief never mentioned it. What we do have is the recitation of decisions that were made apart from the CAA. You are correct, Your Honor, but they never, this is a motion to dismiss. No evidentiary hearing has been held. They never even mentioned the CAA, Your Honor. They also never mentioned the written admission before this court that was in the underlying proceedings. They said that the government of Tajikistan, quote, determines both the complexity and length of the decision adoption process. These decisions are taken by the state through its institutions, close quote. That is more than sufficient to overcome a presumption at the outset of a case before an evidentiary hearing has been held. So, I mean, the cases, I mean, of course, this is an inherently fact-specific inquiry, but it seems looking at the cases, one of the primary factors from the case law is whether the instrumentality was acting on behalf of the state. And that seems to be a factor that gets a lot of weight. So what evidence is there that Tajik Air was acting on behalf of Tajikistan? Your Honor, in this case, what... Which is different from being controlled by it. Yes. What is really happening here? The president of the country set up a different airline called Fallon Air owned by the brother-in-law of the president of the country. And they took steps of control and domination to suppress this particular entity, Tajik Air. They used it as their own agent and they showed control and domination, not in the way Your Honor is talking about, but day-to-day control. For example, Your Honor, they passed a statute. They used that quintessential government power of passing a statute. It transformed and dealt into every business decision and business relationship of this airline. And it transformed vendor debts into potentially worthless tax credits. That is government interference into the day-to-day business functions of the airline. And it's those totality of the circumstances, Your Honor. And that's why I think that this decision, which shows by its own language that the court went fact by fact, requires vacatur and reversal, just as this court did in the foremost McKesson versus Iran and the TIG against Argentina cases. We're at the outset of the case, Your Honors, and we had more than sufficient facts to overcome the presumption. Let me ask you about one other passage in the district court's opinion. And this is at 447 to 448. At 447, we're told Skyroad argues that the following facts overcome the presumption of separate. And there are then seven itemized things. Following which, the court says, these facts, these seven, taken as a whole, fall short of overcoming the presumption that it's separate from the sovereign now. Was there anything besides those seven that was in play? Yes, Your Honor. But let me just take up directly the language that Your Honor is pointing to, because the district court's language leading up to that point made clear that the court looked at each piece of the puzzle and discarded it. In other words, the district court never looked at the forest. It looked only at each individual tree. What's the answer to the judge's question? The answer is yes. There are numerous other facts. For example, they appointed the head of the Department of Transportation legal department, a non-lawyer. He was the person who represented them in the underlying arbitration. Right. So, according to the judge, there were those seven facts we just referred to. And then there are actions taken in the arbitration. Right. And as to these seven, he's saying looking at them in the totality. So, all that leaves out is the actions in the arbitration. Right? Yes. And that's why, Your Honor, at the posture of this case, motion to dismiss without an evidentiary hearing being held, this opinion has to be vacated so that all those facts can be presented in their totality to the district court, exactly as this court did in those other cases. Here, you have a piecemeal analysis that does not comport with circuit precedent. So, is your point that Tajik Air couldn't hire the head of the Transportation Department to represent it in the arbitration? No, Your Honor. But the record says that the Department of Transportation itself is who made that appointment. So, Tajik said we need somebody. Who do you say? No, that's not in the record, Your Honor. No, but you don't have the opposite in the record. That's what I'm trying to get at. We do, Your Honor. It says the Department of Transportation appointed him. I know that it's strange. At whose request? Your Honor, it did not say that there had been a prior request. That's the level of control here. The government controls this airline. It seems to me that you would have to show something more than make that leap that the Department just inserted itself against Tajik's wishes. Well, that was the plain language of the record, Your Honor. But imagine that... I didn't find that, counsel. And I didn't see it in the judge's opinion. You're right. The judge omitted that. But where was it before him? It was in the record where it said it was the Department of Transportation that appointed this individual, this civil servant. I know, but it still doesn't say who requested it. Okay. I see that my time has expired. May I briefly conclude? Briefly. Your Honors, nothing drives this point home better than the analogy brought up by the appellee in their brief to U.S.-based airlines. We all know that the U.S. government does not control a U.S.-based airline. But a U.S.-based airline would never have occasion to say that the U.S. government determines both the complexity and the length of the decision adoption process. These decisions are taken by the state through its institutions. So we ask that you vacate this ruling. All right. Thank you. Whoops. Sorry. Thank you, Your Honor. My colleagues have a question? No, no. No. Thank you. All right. Counsel for appellee. Thank you, Your Honor. May it please the court. Arsalan Suleman for Respondent, Appellee, Oakland Joint Stock Company, Taja Gair. The District Court properly dismissed SkyRoad's petition for lack of personal jurisdiction pursuant to the due process clause of the Fifth Amendment because Taja Gair, a corporation wholly owned by Tajikistan, lacks minimum contacts with the United States. The District Court arrived at this ruling by making findings of fact after examining the whole record in depth and hearing the parties in an oral hearing lasting over 90 minutes. Judge Mehta's opinion is detailed, comprehensive, and fits squarely within this circuit's precedent on the issue, in particular following Judge Ginsburg's opinion in Transamerica leasing versus Venezuela. Your Honors, I'll jump straight to Judge Rogers' question, which was whether the lower court ever said whether the judge was looking at all the factors together. As pointed out by Judge Ginsburg, in fact, the record does show that the judge was looking at all the factors together. Judge Ginsburg pointed to A448 in the opinion, where the judge says these facts taken as a whole fall short of overcoming the presumption. But there's another part of the judge's opinion at the very end, at page A457 of the record, where the judge says, accordingly, the court holds that the facts offered by SkyRoad to show Tajikistan's control over Taja Gair, when viewed as a whole, are insufficient to satisfy the principal agent exception to Banchak's presumption of separateness. And he goes on to say that this conclusion is reinforced by other cases in the circuit where that presumption is overcome. And he compared those cases to the case before him and showed that the factors in those cases were never present in this case. And one of those factors was the factor a judge Rao mentioned, which was the factor of an indication that Taja Gair was acting on behalf of Tajikistan in some way to pursue some sort of government policy. Examples are, for example, Shoham v. Iran, where the finding of the court was that the bank in that case, which was nationalized, was carrying out the policy of the government of Iran to promote and sponsor terrorism. There is obviously no such promotion of any government policy here in terms of a airline carrying out its commercial activities and operations as a airline. There's another case, PMR Energy v. Ukraine, where the finding was that that particular entity, its expenses were being paid directly by the state and it was implementing state policy. And of course, that finding is not present in this case. And that showing was not made by SkyRoad in this case. Given those statements by the judge, what would a appellate have to show? I mean, he says this is fraud and injustice, but would he have to show that the district court's findings were what, inherently incredible? I mean, normally that's a phrase referred to testimony, but I guess plain error here? Yes, Your Honor, it would be clear error. They would have to show that there was a clearly erroneous finding by the district court in terms of the district court's consideration of all the facts here in this case. So for example, about the Department of Transportation appointing the representative, would he have to have some evidence to offer at that point? I mean, hypothetically, some written evidence of a request or no request or a request, but it was rejected by the Transportation Department. I mean, what is the level of overcoming? Yes, Your Honor. Clear error, plain error standard in this case? Right, the appellant would have to show that any particular fact, in this case, if they're arguing the appointment of this attorney, they would have to show that that particular fact somehow in the totality of the circumstances shows that the government of Tajikistan was exerting dominant and overall control over Tajik Air, or that it created some sort of principal agent relationship. Now on this fact specifically, counsel actually has it wrong on the record. First of all, the record shows that Tajik Air hired this gentleman, Mr. Khafizov, in his personal capacity for the arbitration hearing. And that's substantiated, not only by Tajik Air's CEO's declaration to that effect, which is found in the record at A412, but in the arbitration proceedings themselves. At A51 of the record, the tribunal references an authorization letter from Tajik Air dated October, 2017, authorizing Mr. Khafizov to represent Tajik Air. It is Sky Road itself that then asked the tribunal, the arbitration tribunal, to request from Tajik Air and Mr. Khafizov some sort of letter or authorization from the Ministry of Transport to show that he is allowed to represent Tajik Air in this capacity. And it is only after that request was made to the tribunal that Mr. Khafizov then went back to his Ministry of Employment and asked for such a letter of authorization. And this is at record A52. And then at record A54, we see that Mr. Khafizov does present a letter of authorization. It's not a letter of hiring. It's not a letter of appointment. It's not a letter of engagement. The letter of authorization in which the ministry where he is employed said he is authorized, he is okay to conduct this representation where he's representing Tajik Air in his personal capacity, which was explained in the declaration of the CEO of Tajik Air. So, Your Honor, I submit that the record is very clear and obvious that this particular hiring of this attorney, which happened during the arbitration proceedings, does not indicate the type of day-to-day control that Sky Row would have to show in order to overcome the presumption of ban check. Is it common in Tajikistan for government officials to also have private employment in terms of representing private parties? I mean, that's just something that would be fairly foreign to us. Yeah. Your Honor, I'm not sure. I wish I knew more about the practice in Tajikistan. I will say, however, that Tajik Air used to be a state unitary enterprise, meaning it used to be completely owned by the government. And then it was reorganized and privatized in December of 2009. And that restructuring of it into a private corporation may have created some circumstances where the leadership at the time felt more comfortable in hiring an individual in an individual capacity who may have had experience in this particular industry to make this representation of Tajik Air at these arbitration proceedings. But again, the record is very clear that, and this is from the declaration of the CEO, that that representation was always in his personal capacity that he was paid, you know, he was provided a per diem, his hotel costs were paid. And in fact, he was given money to pay for the fees in the court. There was a problem with that, but we don't have to get into that at this time. Can you just speak a little bit about the equitable factors, right? So Tajik Air in the arbitration and in the Lithuanian courts argued that it was a state enterprise. Is that inconsistent with the position it's taking before this court? Well, Your Honor, it's not correct that they argued that they were a state enterprise. That's actually not the case. In the arbitration proceedings in Lithuania, there was a provision of Lithuanian law, Article 12.3 of the Lithuanian Commercial Arbitration Act, which provided that state-owned entities need to get the permission of their parent in order to sign arbitration agreements. The argument made by Tajik Air at that time was simply that at the time the lease was signed, which was September of 2009, when Tajik Air was still a state unitary enterprise. And at that time, it was clearly state-owned enterprise. It still is a state-owned open joint stock company, meaning the state is the primary shareholder. But the language of the Lithuanian statute simply was looking at ownership, not control. Said that state-owned entities would need to get the permission of their parents. So the argument of Tajik Air was, well, there needs to be a showing that Tajikistan then had to give that permission. The tribunal and then the Lithuanian Court of Appeals held that, in fact, the Lithuanian law doesn't say that. It only applies to Lithuanian entities. So it's not applicable to any Tajik entities and there's no provision of Tajikistan law that would require such permission. And so that argument failed. But there was no contradiction between that argument and the argument we made here in these proceedings. The argument before the district court is that as a private company, as a corporation that's separate from state, that presumption of separateness can only be overcome by a showing of a particular amount of control over the corporation. And SkyRoad, which has the burden to show that, did not meet that burden. Judge made the look at that very carefully. He said that there was no contradiction between these two arguments. And we submit that as correct. Also, in terms of the court's precedent on what standard is for looking at that equitable exception, the examples are always where the party is using a particular argument as both a sword and a shield, meaning that they are not only trying to use their status being state-owned in order to deflect jurisdictions, but they're also trying to invoke the U.S. courts for some sort of benefit. And that was most clearly demonstrated in the Banchuk opinion, the Supreme Court's case in Banchuk where the Cuban state-owned entity had brought an action to seek payment on a letter of credit. And then it was seeking to use its state-owned status in order to prevent the hearing of a counterclaim, an offset claim. And the court held that that type of sword and shield usage was inappropriate. That's my time, Your Honor. Thank you so much. We respectfully submit that the district court's opinion could be affirmed on the opinion bill. Thank you. Thank you, counsel. Counsel for Appellant. Thank you, Your Honor. And to give Your Honor the specific record reference about the appointment by the Department of Transportation of the civil servant, non-lawyer, to represent them, it's in the paragraph numbered 45. It's in the record at page A54. But the language that cannot stand here, when the district court said, quote, by its sole authority, close quote, at 452. By themselves at 448. Simply because at 452, quote, bear the burden of overcoming at 457. Your Honors, this is the precise kind of case, such as the foremost McKesson case and the TIG case, in which this court vacates and remands for further fact-finding because no evidentiary hearing has ever been held. We're at the stage of a motion to dismiss. And Your Honor, to Judge Ginsburg's question earlier, they never mentioned the CAA in any declaration, but the agency that controls their day-to-day operations. They never mentioned it in their brief. They never mentioned it today. They just seek to ignore the control by that federal agency. And I ask that Your Honors reverse on that basis. Thank you, Your Honor. Thank you. We'll take the case under advisement.
judges: Rogers, Rao, Ginsburg